IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF RAYNYA V.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF RAYNYA V., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

RAYVELL V., APPELLANT.

Filed October 24, 2023.    No. A-22-969.

Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Michaela Skogerboe, of Harris & Associates, P.C., L.L.O., for appellant.

Regina T. Makaitis, for guardian ad litem.

Christine P. Costantakos, guardian ad litem.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Rayvell V. appeals from the decision of the separate juvenile court of Douglas County terminating his parental rights to his daughter, Raynya V. We affirm.

## BACKGROUND

### PROCEDURAL BACKGROUND

Rayvell is the father of Raynya, born in 2011. Iris J. is Raynya's mother. Iris' parental rights to Raynya were terminated during these same juvenile proceedings below, and that

- 1 -

termination was affirmed on appeal. See *In re Interest of Raynya V. & Jayceon W.*, No. A-23-055, 2023 WL 5605631 (Neb. App. Aug. 29, 2023) (selected for posting to court website). Because Iris is not part of this appeal, she will only be discussed as necessary.

In April 2013, Raynya was removed from Iris' home due to concerns that she had been exposed to drugs while in Iris' home. On April 10, the State filed a petition alleging that Raynya was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) because she lacked proper parental care by reason of the faults or habits of Iris. That same day, the juvenile court entered an order placing Raynya in the custody of the Nebraska Department of Health and Human Services (DHHS) for placement in foster care. Raynya has remained in foster care ever since, except for a few months in 2016 when she lived with Iris. See *In re Interest of Raynya V. & Jayceon W., supra*. In August 2013, Raynya was adjudicated to be within the meaning of § 43-247(3)(a) based on Iris' admission to allegations in the petition that on or about April 2, 2013, Raynya tested positive for amphetamine, cocaine, and cannabinoids. Iris failed to work with DHHS on a voluntary basis, and due to the above allegations, Raynya was at risk for harm.

On March 11, 2016, the State filed a supplemental petition alleging that Raynya was a child within the meaning of § 43-247(3)(a) because she lacked proper parental care by reason of the faults or habits of Rayvell in that:

A. Rayvell . . . is currently incarcerated [and] is scheduled to remain incarcerated to a day and month as yet unknown in 2024.

B. Rayvell . . . is not available to provide safe and stable housing for [Raynya].

C. Rayvell . . . is not available to provide any financial or physical care or support for the physical needs [of Raynya].

D. Due to the above allegations, jointly or severally, [Raynya] is at risk of harm.

After an adjudication hearing on August 24, 2016, Raynya was adjudicated to be within the meaning of § 43-247(3)(a) after the juvenile court found by a preponderance of the evidence that the allegations in the supplemental petition were true.

Following various review and permanency planning hearings, Rayvell was ordered to (1) take self-help measures while incarcerated and (2) not engage in conduct/behaviors which might extend his incarceration or would result in delay of his release.

Three different times in 2016 and 2017, motions were filed to terminate Rayvell's parental rights to Raynya pursuant to Neb. Rev. Stat. § 43-292(2) or § 43-292(1) and (7) (Reissue 2016), alleging that such termination was in the child's best interests. Each time, however, the State or Raynya's guardian ad litem (GAL) subsequently moved to dismiss or withdraw its motion to terminate parental rights and the motions were sustained.

Following a review and permanency planning hearing in August 2017, the juvenile court found, "That with respect to [Rayvell], no further reasonable efforts shall be required, but self-help obligations continue."

On October 26, 2021, Raynya's GAL filed a motion to terminate Rayvell's parental rights to Raynya pursuant to § 43-292(1) and (7). The GAL alleged that Rayvell had abandoned Raynya for a period of 6 months or more immediately prior to the filing of the motion to terminate his parental rights, Raynya had been in an out-of-home placement for 15 or more months of the most recent 22 months, and termination of Rayvell's parental rights was in Raynya's best interests.

The parental rights termination hearing was held on August 10 and October 11, 2022. Rayvell did not appear at the termination hearing but was represented by counsel who did appear. The GAL called two witnesses to testify, and several exhibits were received into evidence. No witnesses were called to testify on Rayvell's behalf.

A copy of the judgment in Rayvell's federal criminal case was received into evidence. It reveals that in October 2013, Rayvell was convicted in the United States District Court for the District of New Mexico of (1) "Possession With Intent to Distribute 100 Grams and More of a Mixture and Substance Containing a Detectable Amount of Phencyclidine (PCP)," and (2) "Possession With Intent to Distribute Codeine"; the offenses occurred in April 2012. He was sentenced to a total term of 180 months' imprisonment, followed by 8 years of supervised release.

Gay Malone was the children and family services specialist assigned to this family from August 2019 through August 2020. When Malone took over the case, she had a case transfer meeting with her supervisor and the previous caseworker and supervisor. She also reviewed the records in the case file, including court orders. Malone testified that Raynya was placed in the custody of DHHS in 2013, and Raynya had not had any in person contact with Rayvell since this case was filed in 2013. When Malone took over the case, Rayvell was residing in a federal prison in Illinois and was not scheduled to be released until 2025.

Malone had email contact with Rayvell "a minimum of one time a month, but it was more often than that." She said that Rayvell was ordered by the juvenile court to participate in self-help efforts and to not have any behavior that would increase his time of incarceration. Malone was not provided with any proof or documentation indicating that Rayvell participated in or completed any self-help programs while incarcerated, nor did Malone find any documentation of such in her review of the case file.

During Malone's time on the case, Rayvell never gave her any gifts, cards, or letters to give to Raynya. However, Rayvell told Malone that his mother and other family members would provide gifts for Raynya for her birthday. Malone was aware from the visitation notes that Raynya was having phone contact with Rayvell during her visits with her mother; that contact was occurring before Malone's time on the case, but she allowed it to continue. When asked if she knew how many times Rayvell had phone contact with Raynya, Malone replied, "that it was at least half of the visits," "not for a long time, just that he would call -- or that they would call." No concerns were ever reported by the visitation worker about the content of those phone calls.

Malone testified that it is "critical" to a child's development that they obtain permanency. She said that children deserve to have "a permanent, safe, secure home" and "a relationship with a permanent, secure, safe caregiver." This "impacts how well a child will be able to have healthy relationships as an adult." According to Malone, factors to consider regarding termination of Rayvell's parental rights are the amount of time that Raynya has been out of home and whether it is likely that Rayvell would be able to provide a home for her in a reasonable amount of time.

Lisa Pollard is a child and family services specialist. She was assigned to this family's case in July 2021 and was their ongoing case manager at the time of the termination hearing. Pollard testified that when she took over the case, she had a transfer meeting with the outgoing caseworker, and she also reviewed the case file. She said Rayvell was ordered by the juvenile court to

participate in self-help measures while he is incarcerated that further his ability to be a safe and stable parent, and he is not to do anything to extend his time or to get himself in further trouble while he is incarcerated. Pollard was not provided with any documentation indicating that Rayvell participated in or completed any self-help programs while incarcerated.

Pollard testified that Rayvell was currently residing in a federal prison in Illinois, having been convicted of drug charges in 2013. Like Malone, Pollard stated that Rayvell has not had in-person contact with Raynya since 2013, but he did have some telephone contact with her during her visits with her mother. (On cross-examination, Pollard was asked if she had any reason to dispute a previous caseworker's report that Raynya expressed that she liked talking with her father on the phone. Pollard replied, "I do not.") During Pollard's time on the case, Rayvell never provided her with any gifts or cards to give to Raynya. (On cross-examination, Pollard was asked if she had any reason to dispute a previous caseworker's report that Raynya said that Rayvell had sent her hand-made cards. Pollard replied, "I do not.") According to Pollard, Rayvell will be incarcerated until 2025 and then have 8 years of supervised release "during which time he could go back to prison at any time." She said that by the time that Rayvell completes his supervised release, Raynya "would be an adult."

Pollard testified that Raynya, who just started middle school, was a "straight-A student." Raynya was "making all of these new friends," "[s]he's getting used to the school that she goes to, to a routine, to sports, to all things that middle school kids do." But "she doesn't know if she's going to be there six months from now or a year from now," "[s]he doesn't know where her permanent place is going to be." "And that really messes with a kid's sense of belonging."

Pollard testified that children need permanency and that "it's important that kids be attached to a forever family." However, Raynya has "grown up in foster care." Raynya has had limited contact with Rayvell because of his incarceration, and there is no possibility of her reuniting with him in the near future for the same reason. Pollard opined that it was in Raynya's best interests to terminate Rayvell's parental rights.

JUVENILE COURT'S DECISION

In an order nunc pro tunc filed on November 23, 2022, the juvenile court terminated Rayvell's parental rights to Raynya after finding that statutory grounds for termination existed pursuant to § 43-292(1) and (7), and that termination of parental rights was in Raynya's best interests.

Rayvell appeals.

ASSIGNMENTS OF ERROR

Rayvell assigns, restated, that the juvenile court erred in finding that statutory grounds exist to terminate his parental rights under § 43-292(1), and that termination of his parental rights was in Raynya's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate

court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

## ANALYSIS

### STATUTORY GROUNDS FOR TERMINATION

Raynya's GAL sought to terminate Rayvell's parental rights under § 43-292(1) and (7). The juvenile court found that both of those grounds existed by clear and convincing evidence. Although Rayvell challenges the court's finding regarding § 43-292(1), he does not dispute that § 43-292(7) was sufficiently proven.

Section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." By the plain and ordinary meaning of the language in § 43-292(7), there are no exceptions to the condition of 15 out of 22 months' out-of-home placement. *In re Interest of Mateo L. et al., supra*. Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Mateo L. et al., supra*. In other words, if the 15-out-of-22 months' period is met, § 43-292(7) is met. See *In re Interest of Mateo L. et al., supra*.

Raynya was removed from her mother's care in April 2013 and remained in foster care thereafter, except for a few months in 2016 when she lived with her mother. By the time the motion to terminate Rayvell's parental rights was filed on October 26, 2021, Raynya had been in an out-of-home placement for all but a few months of the previous 8½ years. The 15-out-of-22 months' period was clearly satisfied.

The GAL has shown clearly and convincingly that § 43-292(7) exists as a statutory basis for terminating Rayvell's parental rights to Raynya. And since any one of the bases for termination codified in § 43-292 can serve as the basis for termination, we need not consider the sufficiency of the evidence concerning any other statutory basis for termination. *In re Interest of Mateo L. et al., supra*. We next consider whether termination is in the child's best interests.

### BEST INTERESTS AND UNFITNESS

Under § 43-292, in addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Although the term "unfitness" is not expressly stated in § 43-292, the Nebraska Supreme Court has said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Leyton C. & Landyn C., supra*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying

facts as the other. *Id.* We have previously set forth the evidence presented at the termination hearing, and we will not recount it again here.

Notably, Rayvell committed drug crimes when Raynya was approximately 9 months old. The record does not reveal whether Rayvell had any contact with Raynya before he was incarcerated. When she was 2 years old, he was sentenced to 180 months' incarceration in federal prison, followed by 8 years of supervised release. At the time of the termination hearing in August and October 2022, Raynya was 11 years old and although she and Rayvell had some phone contact, she had not had any in-person contact with him for approximately 9½ years. And, according to Malone and Pollard, Rayvell was not scheduled to be released from prison until 2025. There is nothing in the record to suggest that he has done anything to increase the length of his incarceration.

There is evidence in the record that Raynya enjoys her phone calls with Rayvell. Raynya seems to be doing well as she is a straight-A student, and she is in the same foster home as her brother with whom she has a strong bond. However, Pollard testified that Raynya has "grown up in foster care" and there is no possibility of her reuniting with Rayvell in the near future because of his incarceration. Pollard opined that it was in Raynya's best interests to terminate Rayvell's parental rights. We agree.

At the time the termination hearing concluded, Raynya had been in an out-of-home placement for all but a few months of the previous 9½ years. Furthermore, Rayvell was not in a position to reunite with Raynya in the near future because he will not be released from prison until 2025, at which time a transition to reunification would still take time. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." *In re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 65 (2008). See, also, *In re Interest of Jahon S.*, 291 Neb. 97, 105, 864 N.W.2d 228, 235 (2015) (incarceration alone cannot be sole basis for terminating parental rights, but it is factor to be considered; although incarceration itself may be involuntary, criminal conduct causing incarceration is voluntary; "[t]hus, in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration"); *In re Interest of Gabriella H.*, 289 Neb. 323, 855 N.W.2d 368 (2014) (incarceration does not insulate inmate from termination of parental rights if record contains clear and convincing evidence that would support termination of rights of any other parent).

Raynya deserves permanency. And when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Leyton C. & Landyn C., supra*. There is nothing in the record before us to indicate that Rayvell is unwilling to rehabilitate himself; however, his incarceration makes him unable to do so in a reasonable period of time. See *In re Interest of Jahon S., supra* (proper to consider parent's inability to perform parental obligations because of incarceration when terminating parental rights). The GAL proved that Rayvell was unfit, meaning that he has a personal deficiency or incapacity which has prevented, or will prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to the child's well-being. See *In re Interest of Leyton C. & Landyn C., supra.* We further find that there is clear and convincing evidence that it is in Raynya's best interests to terminate Rayvell's parental rights.

## CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating Rayvell's parental rights to Raynya.

AFFIRMED.